```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                          EASTERN DIVISION


UNITED STATES OF AMERICA,        )
                                 )
            Plaintiff,           )
                                 )
      v.                         )     No. 4:06 CR 276 CDP
                                 )                     DDN
NOAH LEE ELL,                    )
                                 )
                                 )
            Defendant.           )
```

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This action is before the Court upon the pretrial motions of the parties which were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). An evidentiary hearing was held on July 21, 2006.

Defendant Noah Lee Ell has moved to suppress evidence and statements (Doc. 17). From the evidence adduced at the hearing, the undersigned makes the following findings of fact and conclusions of law:

## FACTS

1. On January 28, 2006, St. Louis Metropolitan Police Officer David Bonenberger was on regular uniform patrol in a police car with his partner, Officer Daniel Ray. At approximately 1:00 a.m., Officer Bonenberger performed a random traffic check of a license number on a vehicle he was behind in the 2600 block of Rachenbach. The officers did a computer check of the license number and were told that the license number was not registered to the make of vehicle to which it was attached.

2. The officers then stopped the vehicle in an area illuminated by overhead street lights. The officers got out of their vehicle. Officer Bonenberger walked up to the driver's side of the vehicle to speak with the driver about the license plate. In the vehicle were five individuals. The driver was a female; the front seat passenger and the three rear seat passengers were men. On the driver's side of the

stopped vehicle, Officer Bonenberger looked through the rear side window and saw the man sitting in the middle of the rear seat, later identified as defendant Noah Lee Ell, remove a chrome plated pistol from his waist and place it on the floor of the vehicle. The officer immediately drew his pistol and ordered the occupants of the vehicle to get out. They did so and were seated on the street curb.

    3. Officer Bonenberger then entered the vehicle, found the chrome plated pistol on the vehicle floorboard, and seized it.

    4. Next, Officer Bonenberger placed Noah Lee Ell under arrest for possession of the pistol. He immediately orally advised Ell of his constitutional rights to remain silent and to counsel. Ell said he understood his rights. Then, without being asked any questions, Ell stated that the chrome plated pistol was not his and that he already had two strikes.

    5. Thereafter, Officer Bonenberger issued a ticket for the license plate to the driver, Denita Gibson. The police took Ell to the police station. The other occupants of the vehicle were released.

    6. At the police station, Officer Bonenberger obtained biographical booking information from Ell. The officer then asked Ell whether he would give a written statement and Ell refused.

## **DISCUSSION**

The motion to suppress evidence should be denied. First, the officers lawfully stopped the vehicle in which defendant was a passenger. The officers personally observed that the vehicle was being operated in violation of state law, because on it was displayed a license number which was not registered to it. See <u>United States v. Bueno</u>, 443 F.3d 1017, 1024 (8th Cir. 2006) (reasonable suspicion to stop car with no license plates, because that is a violation of state law); <u>United States v. Smart</u>, 393 F.3d 767, 770 (8th Cir.), cert. denied, 125 S. Ct. 2921 (2005). Here, the officers knew from their random check of the license number that the plate did not belong to that vehicle. Having license plates on a car that are not registered to that vehicle is a violation of Missouri law. See <u>Missouri v. Reed</u>, 157 S.W.3d 353, 355 (Mo. Ct. App. 2005).

Having observed a violation of the traffic laws, the officers were authorized to stop the vehicle and to conduct an investigation relevant to the observed violation. "Once officers legitimately stop a vehicle, they are entitled to conduct an investigation that is reasonably related in scope to the circumstances that initially justified the stop." <u>Bueno</u>, 443 F.3d at 1025. Here, the officers spoke to the driver about the license plate. No other investigation into any other crime was conducted prior to the observation of the pistol.

When Officer Bonenberger observed the pistol being secreted on the floor of the vehicle, the officers were authorized to take the action they did, both to investigate further the observed unlawful possession of the firearm and to arrest defendant without a warrant for possessing it. "'[M]inimally intrusive weapons searches' at traffic stops will more likely be reasonable because of the 'inherent danger' of traffic stops." <u>United States v. Shranklen</u>, 315 F.3d 959, 962 (8th Cir. 2003). Here, Officer Bonenberger simply looked into the back seat of the vehicle, where defendant, in plain view, dropped the pistol on the floor. After seeing the pistol, he properly ordered the occupants out of the vehicle. "Once a vehicle has been stopped for a traffic violation, a police officer may order the driver out of the vehicle without violating the Fourth Amendment." <u>Bueno</u>, 443 F.3d at 1025.

Having lawfully observed the firearm in the vehicle, because of the mobile nature of the vehicle in a public location, and because of the exigent circumstances surrounding the presence of the firearm, Officer Bonenberger was authorized to enter the vehicle and to seize the pistol without a warrant. "Searches conducted without a warrant are per se unreasonable, subject to a few well-established exceptions." <u>United States v. Hill</u>, 386 F.3d 855, 858 (8th Cir. 2004). One exception is the "automobile exception" that "authorizes officers to search a vehicle without a warrant if they have probable cause to believe the vehicle contains evidence of criminal activity." <u>Hill</u>, 386 F.3d at 585; <u>see also Smart</u>, 393 F.3d at 771 (the officer's sighting of crack in the car properly led to search of vehicle).

Here, the officers had probable cause to believe the car contained evidence of criminal activity. The officer saw the pistol in plain view

through the window of the car. The presence of a firearm increases the already dangerous nature of a traffic stop. Further, it appeared defendant was trying to hide the pistol in the floor. This, coupled with the incorrect license plates, gave the officers probable cause to search the vehicle and seize the pistol.

Further, the arrest of Ell without a warrant was also proper. "To find probable cause to make a warrantless arrest, the facts and circumstances within the officers' knowledge must be sufficient to justify a reasonably prudent person's belief that the suspect has committed or is committing an offense." United States v. Roberson, 439 F.3d 934, 939 (8th Cir. 2006). The officers must look at the totality of the circumstances when making the determination whether probable cause exists. United States v. Mendoza, 421 F.3d 663, 667 (8th Cir. 2005), cert. denied, 126 S. Ct. 1804 (2006).

Here, the totality of the circumstances would make a reasonable prudent person believe that the suspect was or is committing an offense. First, the license plates on the car did not match the vehicle. Second, the officer saw defendant place the pistol in the floor of the car as the officers approached the car, ostensibly to remove it from his person and hide it. This is suspicious behavior. The arrest was proper.

Having lawfully arrested defendant, Officer Bonenberger advised defendant of his constitutional rights to remain silent and to counsel, as prescribed by Miranda v. Arizona, 384 U.S. 866 (1966). Defendant said he understood his rights and, without being questioned, volunteered a somewhat exculpatory statement. This statement and the biographical booking statements defendant made were voluntary, because they were not coerced in any fashion by the police. Colorado v. Connelly, 479 U.S. 157, 169-70 (1986); United States v. Jordan, 150 F.3d 895, 898 (8th Cir. 1998), cert. denied, 526 U.S. 1010 (1999).

The statement made by defendant Ell that the gun was not his and that he already had two strikes should not be suppressed, because it was not made in response to any interrogation and was voluntary. "Voluntary statements of any kind, not made in response to police interrogation, are not barred by the Fifth Amendment and their admissibility is unaffected by Miranda and its progeny." United States v. Wood, 545 F.2d

1124, 1127 (8th Cir. 1976). There is no indication this statement is anything but a voluntary expression by defendant.

Further, the statements defendant gave about his biographical information while being booked should not be suppressed. Routine booking questions used to secure biographical information are an exception to the Miranda requirement. Pennsylvania v. Muniz, 496 U.S. 582, 601 (1990); United States v. Reyes, 908 F.2d 281, 292 (8th Cir. 1990). Therefore, these statements should not be suppressed.

For these reasons,

**IT IS HEREBY RECOMMENDED** that the motion of defendant to suppress evidence and statements (Doc. 17) be denied.

The parties are advised they have until August 11, 2006,[1] to file written objections to this Report and Recommendation. The failure to file objections may result in a waiver of the right to appeal issues of fact.

### ORDER SETTING TRIAL DATE

As directed by the District Judge, this matter is set for a jury trial on the docket commencing September 11, 2006, at 9:00 a.m.

/s/ David D. Noce

**DAVID D. NOCE**
**UNITED STATES MAGISTRATE JUDGE**

Signed on July 31, 2006.

---

[1] This is 11 calendar days from July 31, 2006. See Federal Rule of Criminal Procedure 45(a)(2).